**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DENISE ELAYNE ALVIS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL CASE NO. 3:14-CV-0345-BK** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| **Defendant.** | § | |

**MEMORANDUM OF DECISION**

In January 2014, Plaintiff filed a complaint against the United States, alleging a negligence claim under the Federal Tort Claims Act ("FTCA"). Doc. 1. The facts underlying the complaint involve a collision between a postal service truck and Plaintiff's car. Doc. 1 at 2. Pursuant to the parties' consent to proceed before the undersigned magistrate judge, a bench trial was conducted February 29, 2016 to March 1, 2016. For the reasons that follow, the Court finds for Defendant.

**I. FINDINGS OF FACT[1]**

**A. The Accident**

On the morning of June 2, 2012, Plaintiff was driving her car northbound on County Road 1022 in Joshua, Texas. Doc. 51 at 25- 27 (Tpr. Cason Test.); Doc. 51 at 150-51 (Biggs Test.). Her husband, David Alvis ("Mr. Alvis"), was a passenger in the vehicle. Doc. 51 at 110-11 (Pl. Test.). Stephanie Biggs ("Biggs"), a United States Postal Service mail carrier, was driving southbound on the same road in a Jeep Wrangler. Doc. 51 at 25-26 (Tpr. Cason Test.); Doc. 51 at 141-42 (Biggs Test.). Biggs was traveling less than 30 miles per hour as she approached her intended left hand turn. Doc. 51 at 142-43, 151 (Biggs Test.). Ahead of her in the same lane was an 18-wheeler truck. Doc. 51 at 143 (Biggs Test.). Biggs slowed down in

_____
[1] The Court's factual findings are based on the preponderance of the evidence.

front of a driveway, intending to deliver a package, and put on her left-turn signal.  However, before she had completely stopped, Plaintiff's car crossed the midway point of the road and collided with her Jeep, striking the left front side.  Doc. 51 at 143; Doc. 51 at 151-52, 155 (Biggs Test.); Doc. 51 at 181, 184 (Dr. Bowles Test.).

Following the accident, Mr. Alvis pulled Plaintiff from the car and laid her on the ground. Doc. 51 at 66 (Pl. Test.); Doc. 51 at 112 (D. Alvis Test.).  Biggs called 911, and emergency medical workers from CareFlite arrived.  Doc. 51 at 27 (Tpr. Cason Test.); Doc. 51 at 153 (Biggs Test.); Def. Ex. 14.  The paramedics saw no visibly apparent injuries to Plaintiff, but she was assessed by the paramedics as being essentially comatose and taken to a hospital by helicopter. Doc. 51 at 204-06 (Dr. Bowles Test.); Def. Ex. 14 at 2, 11.  According to CareFlite records, Mr. Alvis stated that his wife "became unresponsive while driving and then hit the other car."  Doc. 51 at 128 (Pl. Test.); Def. Ex. 14 at 2.  Mr. Alvis also averred at his deposition that Plaintiff was unconscious at the time of impact.  Doc. 51 at 129 (D. Alvis Test.).  At trial, however, Mr. Alvis testified that he did not make those statements.  Doc. 51 at 27-28; Doc. 51 at 129 (D. Alvis Test.).

Due to Plaintiff's anxiety and post-traumatic stress disorder, a few hours before the accident and on the previous day, she took Xanax given to her by a friend.  Doc. 51 at 74; Doc. 51 at 84 (Pl. Test.).  She recalled taking two milligrams each time, but later claimed that she was not sure about the dosage.  Doc. 51 at 75; Doc. 51 at 84; Doc. 52 at 4-5 (Pl. Test.).  After the accident, Plaintiff tested positive for both Xanax and marijuana.  Doc. 51 at 89 (Pl. Test.); Doc. 51 at 210 (Dr. Bowles Test.); Def. Ex. 17 at 10, 15.

**B.  Cause of the Accident**

Upon investigation at the scene of the accident, Carlton Cason, a Texas state trooper, issued a citation to Biggs for turning when unsafe.  Doc. 51 at 23-25; Doc. 51 at 32 (Tpr. Cason Test.); Def. Ex. 11.  His determination that Biggs was turning at the time of the accident was based on his opinion that (1) the Jeep was at an angle like it was turning into the driveway, and (2) the front damage to the Jeep was not as bad as it would have been if Plaintiff had come into Biggs's lane.  Doc. 51 at 27-28, 30-32 (Tpr. Cason Test.).  Trooper Cason did not mark the vehicles' final resting places, document any debris or fluid spill, take measurements, photographs, or video, or detect skid marks that were present, and did not have the highest level of accident reconstruction training.  Doc. 51 at 38-39, 41-42, 45-46; Doc. 51 at 48, 51 (Tpr. Cason Test.).  Trooper Cason also was not aware that Plaintiff had Xanax and marijuana in her system or of Mr. Alvis' statements that Plaintiff lost consciousness before the accident.  Doc. 51 at 26; Doc. 51 at 51-52; Doc. 51 at 62 (Tpr. Cason Test.).

Biggs sent her citation to an attorney, who entered a guilty plea for her, although she thought she was fighting the ticket.  Doc. 51 at 144-45 (Biggs Test.); Def. Ex. 12.  Ultimately, she completed deferred adjudication probation in County Court at Law No. 1 in Johnson County, Texas, and the citation for turning when unsafe was dismissed.  Doc. 51 at 56; Def. Ex. 12 at 1, 8.

The government's expert witness, Dr. Bowles, is a medical doctor and is also an expert in accident reconstruction.  Doc. 51 at 171-3, 175-6 (Dr. Bowles Test.).  Dr. Bowles testified at length about the position the vehicles were in when the collision occurred, relying on street view imaging, computer-aided design, and photographs from the scene which showed fluid trails and skid marks.  Doc. 51 at 177-87; Doc. 51 at 250-52 (Dr. Bowles Test.).  Based on these

techniques, Dr. Bowles concluded that the Jeep was not turning at the time of the accident, but rather that the vehicles were aligned in polar opposite directions of travel with Plaintiff's car overlapping approximately 50 percent onto the side of the road that the Jeep was traveling on. Doc. 51 at 181-82, 184.  In other words, the midline of Plaintiff's car was approximately over the midline of the 21-foot wide roadway at which point the vehicles collided.  Doc. 51 at 185-87.

Dr. Bowles further testified that Mr. Alvis's statement at the scene of the accident that Plaintiff had become unresponsive while driving is consistent with her having taken Xanax, a powerful medication that is used for anxiety and also as a sedative.  Doc. 51 at 188; Doc. 51 at 204 (Dr. Bowles Test.).  Medical research has shown that Xanax causes impaired driving.  Doc. 51 at 188-89, 191 (Dr. Bowles Test.).  Among other problems revealed in such studies, drivers taking Xanax can stray from the correct traffic lane and fall asleep at the wheel.  Doc. 51 at 192-93 (Dr. Bowles Test.).  Xanax's pharmacy label warns users that the medication may cause drowsiness and that patients should use care when operating machines.  Doc. 52 at 5 (Pl. Test.).

Based on the foregoing, the Court finds that Plaintiff lost consciousness before the collision.  First, Plaintiff was noted to be essentially comatose at the scene although she had no visible injuries.  Additionally, Mr. Alvis told the paramedics that Plaintiff "became unresponsive while driving and then hit the other car" and testified consistently with that in his deposition, only changing his story during trial.  Moreover, Plaintiff admitted that she did not have a prescription when she took Xanax, a drug that has sedative effects, both on the day before and just a few hours before the accident occurred.  And based on Dr. Bowles's testimony, the Court concludes that Plaintiff's car crossed the midway point of the road and collided with Biggs's Jeep, striking the left front side.  The Court finds it implausible in light of the evidence of record that the Jeep leaped out of a ditch − a detail Plaintiff and Mr. Alvis mentioned for the first time at

trial − and blocked the entire roadway.  *See* Doc. 51 at 65; Doc. 51 at 90-91 (Pl. Test.); Doc. 51 at 112 (D. Alvis Test.).

## C.  Injuries to Plaintiff

On the day of the accident, Plaintiff was taken to the hospital.  Doc. 51 at 206 (Dr. Bowles Test.); Def. Ex. 17.  Plaintiff complained of chest pain where struck by the car's deploying air bag.  Doc. 51 at 68 (Pl. Test.).  She underwent multiple tests, including numerous CT scans, which were all negative, and the medical staff found no bumps, bruises, or other traumatic or "force-related" injuries.  Doc. 51 at 207-09 (Dr. Bowles Test.); Def. Ex. 17.  It was noted that Plaintiff's loss of consciousness was likely due to medical reasons rather than trauma. Doc. 51 at 207-09 (Dr. Bowles Test.); Def. Ex. 17.  Plaintiff left the hospital against medical advice prior to the completion of her diagnostic evaluation.  Doc. 51 at 21 (Dr. Bowles Test.); Def. Ex. 17.  She went back to the hospital twice more, but providers found no injuries.  Doc. 51 at 71 (Pl. Test.); Doc. 51 at 211-15 (Dr. Bowles Test.); Def. Ex. 16; Def. Ex. 17.

The Alvis's testimony regarding her injuries following the accident was inconsistent. Plaintiff insisted that when she came home she "couldn't even lay down" and "had to sit up and sleep."  Doc. 51 at 70.  Mr. Alvis, on the other hand, testified that his wife could lie down and laid down in bed.  Doc. 51 at 114.  In addition, Plaintiff alleged that for six months she could not drive, take her son to school, or buy groceries.  Doc. 51 at 76-77.  Mr. Alvis said during his deposition that his wife did all of those activities although he testified to the contrary at trial. Doc. 51 at 135-36.  In light of the foregoing testimony and a review of the evidence of record, the Court concludes that Plaintiff's testimony that she suffered more than *de minimis* injuries as a result of the accident is not credible.

## II.  CONCLUSIONS OF LAW

### A.  Federal Tort Claims Act

This action is properly before the Court pursuant to the FTCA, 28 U.S.C. §§ 1346(b), 2671 *et seq*.  The Court has jurisdiction of all matters in controversy and over all parties pursuant to 28 U.S.C. § 1346(b).  As a jurisdictional prerequisite to maintaining a negligence suit against the United States under the FTCA, a plaintiff must first present notice of his claim to the appropriate federal agency.  *Life Partners, Inc. v. United States*, 650 F.3d 1026, 1029-30 (5th Cir. 2011).  When the claim has been denied or six months have passed since notification, a plaintiff may file suit on the claim in federal court.  28 U.S.C. § 2675(a).  In this case, Plaintiff has met this jurisdictional prerequisite.  Venue lies in the Northern District of Texas pursuant to 28 U.S.C. § 1402(b), as the act about which Plaintiff complains occurred in this district.

The FTCA does not grant plaintiffs the right to a jury trial.  *Andrade v. Chojnacki*, 338 F.3d 448, 457 (5th Cir. 2003).  Rather, FTCA cases are litigated in a bench trial, following which the court must find the facts specially and state its conclusions of law separately.  FED. R. CIV. P. 52(a).  The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under Rule 58.

In FTCA actions, the substantive law of the state where the alleged injury occurred is controlling.  *Lee v. United States*, 765 F.3d 521, 523 (5th Cir. 2014).  Texas law therefore applies.  Under Texas law, the elements of actionable negligence are the existence of a duty, the breach of that duty, proximate cause, and resulting injury.  *Leonard v. Aluminum Co. of America*, 767 F.2d 134, 136 (5th Cir. 1985); *Colvin v. Red Steel Co*., 682 S.W.2d 243, 245 (Tex. 1984).

**B.  Biggs Was Acting in the Course and Scope of Her Federal Employment.**

Under the FTCA, the United States is liable for any negligent act or omission committed by its employees when such acts or omissions are committed within the scope of their federal employment.  28 U.S.C. § 1346(b)(1); *McGuire v. Tumbo*, 137 F.3d 321, 324 (5th Cir. 1998).  It is undisputed that at the time of the accident Biggs was working in the course and scope of her employment for the Postal Service, an agency of the United States.  Doc. 51 at 142 (Biggs Test.).

**C.  Negligence**

A plaintiff must prove the existence of a legal duty to establish tort liability.  *Abalos v. Oil Dev. Co. of Tex.*, 544 S.W.2d 627, 631 (Tex. 1976).  "Duty" means a duty to act as a reasonably prudent person would under the same or similar circumstances, considering the reasonably foreseeable risk or probability of injury to persons situated as the plaintiff.  *Northwest Mall, Inc. v. Lubri-Lon Int'l, Inc.*, 681 S.W.2d 797, 802 (Tex. App. 1984).  It is the general duty of every driver to keep her car under control, drive at a reasonable speed, and to keep a lookout for others.  *Wendelken v. McMurray*, 388 F.2d 553, 556 (5th Cir. 1967).

In order to establish proximate cause, a plaintiff must establish both cause-in-fact and foreseeability.  *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992).  Cause-in-fact means that the negligent act was "a substantial factor in bringing about the injury and without which no harm would have been incurred."  *Id.*  An act is foreseeable if a person of ordinary intelligence should have anticipated the danger to others by her negligent act.  *Id.*

It is clear in this case that Biggs owed Plaintiff a duty while driving her postal route.  *Wendelken*, 388 F.2d at 556.  Nevertheless, based on the facts discussed above, Biggs did not breach her duty.  Specifically, Biggs kept her vehicle under control by slowing down to make a turn.  She did not breach any duty when Plaintiff crossed the center lane and collided with her

car.  As noted previously, Plaintiff presented insufficient evidence that Biggs did not drive safely

on the day of the accident.[2]  For the same reasons, Plaintiff did not show that Biggs was the

proximate cause of the accident because she cannot show that Biggs was either the cause-in-fact

of the accident or that it would be foreseeable to Biggs that she would cause the accident.

*Travis*, 830 S.W.2d at 98.  As such, entry of judgment against Plaintiff is appropriate.

## III.  CONCLUSION

For the foregoing reasons, judgment will be entered for Defendant in accordance with

Memorandum of Decision.

**SIGNED** May 2, 2016.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[2]  Biggs's guilty plea to making an unsafe turn does not collaterally estop this result because the United States was not privy to her state court case.  *See John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002) (holding that a party seeking to assert the bar of collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action). Moreover, Biggs's citation was ultimately dismissed.